<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMUEL N. GILMORE, ET AL., | |
| Plaintiffs, | Civ. No. 09-5956 (DRD) |
| v. | **O P I N I O N** |
| WEST ORANGE POLICE OFFICER KEITH REILLY, ET AL. | |
| Defendants. | |

*Appearances by:*

KOLES, BURKE & BUSTILLO, LLP
by: Jonathan Koles, Esq.
2600 John F. Kennedy Boulevard, Suite 1K
Jersey City, NJ 07306

    *Attorneys for Plaintiffs*

DeCOTIIS, FITZPATRICK & COLE, LLP
by: Steve Mannion, Esq.
Glenpointe Centre West
500 Frank W. Burr Boulevard, Suite 31
Teaneck, NJ 07666

    *Attorneys for Defendants Township of West Orange and James P. Abbott*

<u>**DEBEVOISE, Senior District Judge**</u>

    This matter arises out of an August 5, 2008 incident in which Plaintiffs Samuel N. Gilmore and Tyrone S. Williams allege that various members of the West Orange Police Department violated their constitutional rights. Specifically, Plaintiffs claim that three named

Defendants – Officer Keith Reilly, Officer Sayer, and Detective Marucci[1]– along with several unknown "John Doe" Defendants (collectively "the individual officers"), subjected Mr. Williams to a warrantless strip search, physically abused Mr. Gilmore, wrongfully arrested both Plaintiffs, and filed spurious criminal charges against them.  Additionally, Plaintiffs claim that the individual officers engaged in a conspiracy to conceal their wrongdoing.

Arguing that the officers' alleged violations were motivated at least in part by the fact that they are African-American, the Plaintiffs on October 29, 2009 filed suit in the Superior Court of New Jersey asserting claims against the individual officers, ten unknown "John Doe" Defendants, the Township of West Orange ("West Orange" or "the Township"), the West Orange Police Department, and James P. Abbot, the Township's Chief of Police ("Chief Abbot"), under 42 U.S.C. §§ 1981, 1983, and 1985, and the New Jersey Civil Rights Act of 2004 ("NJCRA"), N.J. Stat. Ann. § 10:6-1, et seq.[2]  Chief Abbot and the Township removed the action to this Court on November 20, 2009, and five days later submitted a Motion to Dismiss (1) all claims against the West Orange Police Department, (2) all supervisory liability claims asserted against the Township and Chief Abbot, and (3) all claims for punitive damages asserted against those parties.  Plaintiffs did not oppose the Motion.  Based on their failure to do so, the Court on December 21, 2009 entered an Order dismissing the aforementioned claims with prejudice.

---

[1] Plaintiffs did not include the first names of Officer Sayer and Detective Marucci in their Complaint.

[2] Plaintiffs stated in their Complaint that they wished to assert claims for violations of New Jersey state law, but did not articulate with specificity the grounds on which they could bring a civil suit to redress such violations.  Given the nature of Plaintiffs' factual allegations, their claim under New Jersey state law arises under the NJCRA, which permits civil suits by "[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of" New Jersey.  N.J. Stat. Ann. § 10:6-2(c).

2

In the pending motion, Plaintiffs request that the Court reconsider and vacate its December 21, 2009 Order. They support that request by claiming that they were not served with the earlier Motion to Dismiss. In fact, Plaintiffs assert that they were unaware that the case had been removed to this Court until receiving notice of the December 21, 2009 Order dismissing their claims against the West Orange Police Department and Chief Abbot. Defendants effectively concede that the Motion for Reconsideration should be granted, choosing instead to direct their arguments – by means of a cross-Motion to Dismiss filed as part of their opposition – to the substantive question of whether Plaintiffs' claims are sufficient to survive review under Federal Rule of Civil Procedure 12(b)(6). In light of that concession and the manifest injustice that would result from dismissing the claims at issue without allowing opportunity for argument, the Court will grant Plaintiffs' Motion for Reconsideration by vacating its December 21, 2009 Order. See N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (Reconsideration is justified when withholding that relief would result in "clear error of law or … manifest injustice."). The question of whether Plaintiffs' factual allegations state a claim upon which relief can be granted will be addressed in conjunction with the pending Motion to Dismiss.

Defendants' arguments in support of their Motion to Dismiss take three parts. First, they contend that the Plaintiffs' claims against the West Orange Police Department must be dismissed because that organization is an instrumentality of the Township rather than a separate entity subject to being sued in its own right. With respect to the Plaintiffs' supervisory liability claims against Chief Abbot and the Township, Defendants assert that (1) Chief Abbot is immune from liability because he did not participate in the police misconduct on which those claims are based, and (2) the claims against West Orange must fail because, if Plaintiffs' factual allegations are

true, the actions on which their suit is based constituted willful misconduct committed outside the scope of the individual officers' employment. Even if the Court refuses to dismiss those claims, Defendants contend that it should strike the Plaintiffs' request for punitive damages from Chief Abbot and the Township, as they are statutorily immune from such liability.

Plaintiffs concede that their claims against the West Orange Police Department should be dismissed, but contend that their supervisory liability claims against the Township and Chief Abbot should be reinstated. In doing so, Plaintiffs acknowledge that the Township will be immune from liability if the police misconduct on which this suit is based is found to be outside the scope of the individual officers' employment, but argue as a factual matter that it was not. Similarly, Plaintiffs concede that their supervisory liability claims against Chief Abbot cannot be sustained unless he participated in the misconduct at issue, but argue that they should be allowed to conduct discovery in order to determine whether or not he did so. Finally, Plaintiffs request that the Court reinstate their claims for punitive damages against the individual officers and Chief Abbot.

For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part and denied in part. In light of Plaintiffs' acknowledgement that the West Orange Police Department is an instrumentality of the Township that cannot be sued in its own right, their claims against that organization will be dismissed with prejudice. Plaintiffs' claims against Chief Abbot will be dismissed without prejudice, as their Complaint states that he is sued in his personal capacity but does not include any allegation that he participated in or was aware of the police misconduct on which the suit is based. Plaintiffs' claims against the Township under 42 U.S.C. §§ 1981, 1983, will be dismissed without prejudice. The first section does not confer a civil cause of action, but rather a substantive right that must be enforced by bringing suit under §

1983. That section requires Plaintiffs to allege that the violations they suffered were part of a policy or customary practice promulgated by the Township, and they have not done so. Plaintiffs' claims against the Township under 42 U.S.C. § 1985 will be dismissed with prejudice, as that section applies only to conspiracies, and the Plaintiffs do not contend in their Complaint that the Township was party to the alleged conspiracy between the individual officers. Finally, Plaintiffs' claims for punitive damages asserted against the individual officers and unknown "John Doe" Defendants will be reinstated, as they were not the subject of the previous Motion to Dismiss and were wrongly included in the Court's December 21, 2009 Order.

## I. BACKGROUND

The factual contentions below are drawn from Plaintiffs' Complaint. In keeping with the Court's duty to assume the veracity the allegations contained in the Complaint when deciding the pending Motion to Dismiss, Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), any contradictory factual assertions on the part of Defendants have not been credited. Defendants may, of course, submit evidence calling into question the accuracy of any of the following allegations at a proper time later in the course of the litigation.

The events that give rise to this action occurred on August 5, 2008. That afternoon, Plaintiff Williams was stopped by members of the West Orange Police Department while walking home from a local business. He was accompanied at the time by James Parker, a family friend. The officers conducted a pat-down search of both Plaintiff Williams and Mr. Parker, but found no evidence of contraband or criminal activity.

During the course of the stop, the officers learned – presumably by consulting a computerized database – that another municipality had issued a warrant for Mr. Parker's arrest. On doing so, they detained both Mr. Parker and Plaintiff Williams. The former was handcuffed

and placed in the back seat of the officers' car, while the latter was instructed to sit on a curb and remove his shoes so that they could be searched. Plaintiff Williams complied, but the officers' examination of his footwear revealed no contraband or other evidence of criminality.

While the officers who had initially detained Plaintiff Williams were inspecting his shoes and arresting Mr. Parker, Defendants Reilly and Sayer arrived on the scene. On doing so, one or both subjected Plaintiff Williams to another pat-down search, which failed to reveal any evidence of wrongdoing. Following the second pat-down, Plaintiff Williams was instructed to remove his hat. He did so, and the officers inspected it, but found no evidence of wrongdoing.[3]

Plaintiff Gilmore is Plaintiff Williams's father. Shortly after Plaintiff Williams was initially stopped by the police, Plaintiff Gilmore received a telephone call from a friend informing him of that development. On hearing that his son had been detained, Plaintiff Gilmore left the residence the two shared and proceeded to the area where the police were questioning Plaintiff Williams. On arriving, he saw his son handcuffed and sitting on the curb while the police inspected his shoes. Plaintiff Gilmore asked one of the police officers what was going on, and was told that he would have to wait a few minutes before they could give him any information. He did so, waiting while the police who made the initial stop arrested Mr. Parker and Defendants Reilly and Sayer arrived on the scene.

After approximately 20 minutes, Plaintiff Gilmore again asked the police what was happening. In response, Defendant Reilly snapped, "Shut the fuck up and get back, Motherfucker." Plaintiff Gilmore persisted, at which point Defendant Reilly approached him, stated that he was under arrest, and knocked him backward to the ground. Defendant Reilly and another officer flipped Plaintiff Gilmore so that he was lying on his stomach, and one of the

---

[3] It is unclear from the Complaint whether Plaintiff Williams's hat was inspected by Officers Reilly and Sayer or by the unnamed officers who conducted the initial stop.

officers tried to place his foot on the back of Plaintiff Gilmore's head. When Plaintiff Gilmore turned to avoid the officer's foot, Defendant Reilly sprayed his face, including the eyes, with pepper spray. Plaintiff Gilmore was then handcuffed and placed in the back seat of Defendants Reilly and Sayer's police car, where he claims that the officers closed the windows and turned on the heat in order to exacerbate the effects of the pepper spray.

While Defendant Reilly and the unnamed officer were arresting Plaintiff Gilmore, Defendant Sayer and the others did the same to Plaintiff Williams. Both Plaintiffs were transported to the local police station.

On arriving at the police station, Plaintiff Williams was informed by the Defendant officers that he was being charged criminally with possession of illegal drugs. The officers falsely claimed that he had disposed of those drugs by throwing them through a storm drain just before being stopped. A later inspection of the storm drain by Defendant Detective Marucci, however, did not reveal any contraband. In fact, Detective Marucci told Plaintiff Williams's brother, who was present and observed the search of the storm drain, that he was unable to find any drugs and Williams should be released.

Shortly after he arrived at the police station, Plaintiff Williams was subjected to a strip search. During that search, one officer inspected his body while another engaged in a detailed examination of his clothes. Neither officer discovered contraband or other evidence of criminality.

Despite the fact that the Defendant officers' searches of his clothing, person, and the storm drain had not produced any contraband, Plaintiff Williams was held at the police station until the early hours of August 6, 2008, at which time he was transported to Essex County Jail. After being fingerprinted and photographed by the authorities at the latter facility, Plaintiff was

incarcerated pending arraignment, which was conducted by videoconference on August 7th. At his arraignment, bail was set in the amount of $500. Plaintiff Williams posted that amount and was released on August 8, 2008. The charges against him were later dismissed.

By the time Plaintiff Gilmore arrived at the police station he was suffering visible injuries from the pepper spray that Defendant Reilly had sprayed him with while detaining him. An emergency medical technician ("EMT") on duty at the station examined Plaintiff Gilmore and suggested that he be taken to a hospital. In response, one of the "John Doe" Defendant officers told the EMT to "get the hell out of here" and stated that Plaintiff Gilmore would not be taken to the hospital. Plaintiff Gilmore was charged with assaulting a police officer and resisting arrest, and was detained in the Essex County Jail for 11 days, until August 16, 2008. All criminal charges against him were eventually dismissed.

## II. DISCUSSION

On the basis of the allegations set forth above, Plaintiffs' Complaint asserts claims against Officers Reilly and Sayer, Detective Marucci, ten unknown officers, Chief Abbot, the Township, and the West Orange Police Department. As discussed above, Plaintiffs concede that their claims against the West Orange Police Department must be dismissed. Thus, the Court need only consider whether the allegations contained in Plaintiffs' Complaint are sufficient to state a claim on which relief can be granted against Chief Abbot and the Township, and if so, whether Plaintiffs may seek punitive damages in conjunction with those claims.

Despite stating in their Complaint that "[h]e is sued in his individual capacity," (Compl. ¶ 8), Plaintiffs do not allege that Chief Abbot had actual knowledge of the abuses committed by Officers Reilly and Sayer, Detective Marucci, or the ten unknown officers. Rather, they claim that Chief Abbot and the Township (1) failed to institute hiring and disciplinary procedures that

8

would have resulted in the suspension or termination of the individual officers before they abused the Plaintiffs, (2) did not provide proper training on issues such as when police officers may conduct a warrantless stop and pat-down of a suspect or subsequent strip search, and (3) maintained unwritten customs and practices that allowed unlawful detention and strip searches of suspects based, at least in part, on their race. (Compl. ¶¶ 37-39.) Based on those assertions, Plaintiffs claim that Chief Abbot and the Township "acted intentionally, willfully, and/or with deliberate indifference," and "were the direct cause" of their injuries. (Compl. ¶ 48.) In order to decide the pending Motion to Dismiss, the Court must determine whether those allegations state a claim upon which relief can be granted under of the standard of review applicable under Federal Rule of Civil Procedure 12(b)(6).

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse, 132 F.3d at 906. The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would

entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B. Claims Against Chief Abbot**

As discussed above, Plaintiffs assert claims against Chief Abbot under three federal statutes: 42 U.S.C. §§ 1981, 1983, and 1985. The first section confers the substantive right on "all persons within the jurisdiction of the United States" to "full and equal benefit of all laws and proceedings for the security of persons and property" regardless of race, 42 U.S.C. § 1981, while

10

the second allows a plaintiff to bring a civil action to recover against any person or municipal entity that, while "acting under color of state law," infringes on that right or any other "secured by the Constitution or laws of the United States." 42 U.S.C. § 1983; see also McGovern v. City of Philadelphia, 554 F.3d 114, 116 (3d Cir. 2009) ("[W]hile § 1981 creates rights, § 1983 provides the remedy to enforce those rights against state actors.") (emphasis in original).[4] The final of the three federal statutes on which Plaintiffs premise their suit allows a plaintiff to recover against any individual or entity that engages in a conspiracy to violate the first two. 42 U.S.C. § 1985(3). Additionally, Plaintiffs assert claims under the NJCRA, which closely tracks the aforementioned federal statutes but also applies to rights, privileges, and immunities conferred by the New Jersey Constitution or the laws of that state. N.J. Stat. Ann. § 10:6-2.

Plaintiffs' Complaint clearly asserts that Chief Abbot "is sued in his personal capacity." (Compl. ¶ 8.) In order to state such a claim against a supervisor for the actions of his or her subordinates under either § 1983 or the NJCRA, a plaintiff must allege that the supervisor was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." McKenna v. City of Philadelphia, 528 F.3d 447, 460 (3d Cir. 2009) (applying federal statutes); see also Delbridge v. Schaeffer, 569 A.2d 872, 887 (N.J. Super. Ct. L. Div. 1989) (applying New Jersey law). Plaintiffs have not done so. Their Complaint contains no allegation that Chief Abbot either participated in or was aware of the actions of Officers Reilly and Sayer, Detective Marucci, and the unnamed Defendants.

Plaintiffs contend they are entitled to discovery on the question of whether Chief Abbot had knowledge of or participated in the violations on which their suit is premised. That

---

[4] Plaintiffs' Complaint appears to separately invoke §§ 1981 and 1983. In light of the fact that "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units," Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989), the Court will treat all claims asserted under either statute as arising under § 1983.

argument is unavailing.  In the absence of any allegation in the Complaint that Chief Abbot knew of or participated in the individual officers' actions, the Plaintiffs' claim – asserted for the first time in connection with the pending Motion to Dismiss – that discovery might reveal evidence of such knowledge or participation is insufficient to "raise a right to relief above the speculative level."  Bell Atl., 550 U.S. at 545.  In such situations, the Court is prohibited from "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions," and must dismiss.  Iqbal, 129 S. Ct. at 1950.

"Ordinarily where a complaint is dismissed on … 'failure to plead with particularity' grounds alone, leave to amend is granted."  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1435 (3d Cir. 1997).  A possibly meritorious claim should not be precluded because of a defect in the pleadings, and leave to amend should be granted in cases where a complaint is dismissed for failure to state a claim unless doing so would be futile.  Id. at 1434-35.  Therefore, the Court will grant Plaintiffs 30 days to amend their claims against Chief Abbot in order to comply with the standards enumerated in Iqbal, 129 S. Ct. at 1949-50.  Any amended claims against Chief Abbot must include non-frivilous factual allegations that raise the likelihood that he knew of or participated in the alleged wrongdoing at issue above the level of mere speculation.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.

**C.  Claims Against the Township**

Plaintiffs' claims against the Township are, at least purportedly, also based on 42 U.S.C. §§ 1981, 1983, and 1985, along with the NJCRA.  As a preliminary matter, the Court notes that Plaintiffs' Complaint does not allege that the Township itself – as opposed to its employees – engaged in a conspiracy to violate their rights as prohibited by § 1985.  In fact, Plaintiffs'

12

conspiracy claims are premised on their allegation that Officers Reilly and Sayer, Detective Marucci, and the ten unknown "John Doe" officers filed false reports in order to conceal their wrongdoing, presumably from higher officials within the West Orange Police Department and other instrumentalities of the Township.  Assuming the veracity of those allegations, the Township itself would have been defrauded by the conspiracy – it would be a victim rather than a participant.  Therefore, to the extent that Plaintiffs' claims against the Township are premised on § 1985, those claims will be dismissed with prejudice.

Plaintiffs' claims under 42 U.S.C. §§ 1981 and 1983 must also be dismissed.  As discussed above, the former section confers a substantive right, which may be enforced through a civil suit pursuant to the latter.  When a plaintiff brings suit pursuant to § 1983 against a municipal body instead of the individuals who committed the alleged violation, he or she must demonstrate that the violations on which the suit is premised resulted from a policy, practice, or custom either officially promulgated or unofficially encouraged by the body's officers.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 691 (emphasis in original).  Thus, a plaintiff seeking to hold a municipality liable for the actions of its employees must demonstrate either (1) that those actions were committed pursuant to a policy endorsed by the municipality or (2) were part of a customary practice as evidenced by a pattern of similar violations.  See Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (affirming trial court's grant of summary judgment due to plaintiffs' failure to demonstrate a "pattern" of abuse).

13

In their Complaint, Plaintiffs attempt to overcome that requirement by alleging in conclusory fashion that the abuses committed by the individual officers were part of a customary practice, stating:

> Defendants Town of West Orange and James P. Abbot maintained unwritten customs and practices which permitted or condoned the unlawful search of persons, the unlawful detentions and searches of pedestrians on public sidewalks without cause, the unlawful seizure of persons, and subjecting citizens to strip searches and disparately harsh law enforcement practices on account of their race.

(Compl. ¶ 47.)

That assertion alone is insufficient to survive the pending Motion to Dismiss. Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs' Complaint gives no reason to believe that the Township pursued a customary policy of unlawful searches, seizures, and racial discrimination beyond their conclusory statement to that effect. Other than the alleged abuses to which they were subjected, Plaintiffs have not pointed to a single case involving similar violations, much less a pattern of wrongdoing. In light of their failure to do so, Plaintiffs' contention that the Township "maintained unwritten customs and practices" that condoned the individual officers' alleged wrongdoing is purely speculative, and their § 1983 claim against the municipality must be dismissed. See Okla. City v. Tuttle, 471 U.S. 808, 821 (1985) (plurality) (In the absence of a written policy that is itself unconstitutional, "more proof than the single incident [of excessive police force] will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation."); 832 (Brennan, J., concurring in the judgment) ("[A] single incident of police misbehavior … is insufficient as sole support for an inference that a municipal policy or custom caused the incident.") (emphasis in original);

14

Fairness requires that Plaintiffs be allowed to cure the defects in their § 1983 claim against the Township and reassert that cause of action. Burlington Coat Factory, 114 F.3d at 1434-35 (stating that leave to amend should be granted in cases where a complaint is dismissed for failure to plead with particularity unless doing so would be futile). Therefore, Plaintiffs will be granted 30 days to amend and reassert their § 1983 claim against the Township. Should they choose to do so, Plaintiffs much include non-frivilous factual allegations that raise the likelihood that the Township pursued a customary practice of allowing such activity above the level of mere speculation by pointing to other incidents in which West Orange police engaged in unlawful searches, seizures, and racial discrimination.

In contrast, Plaintiffs need not demonstrate a policy or customary practice on the part of the Township in order to prevail on their NJCRA claim against the Township. Both parties acknowledge that the Township's potential liability on claims arising under New Jersey state law is governed by the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:2-2, which states that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." A municipality is not liable, however, for "the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. Thus, Plaintiffs' NJCRA claim against the Township must be dismissed if, assuming the veracity of the factual allegations contained in the Complaint, the violations committed by Officers Reilly and Sayer, Detective Marucci, and the ten "John Doe" officers, constituted a crime or "willful misconduct." If, however, the individual officers' alleged violations could have been committed while acting within the scope of their employment, Plaintiffs' NJCRA claim must be sustained.

Willful misconduct "is not immutably defined, but takes its meaning from the context and purpose of its use." Fielder v. Stonack, 661 A.2d 231, 242 (1995). "[I]n the context of a police officer's enforcement of the law … willful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline." Id. at 243.

The violations Plaintiffs complain of clearly fall into that category. They include (1) an unprovoked assault on Mr. Gilmore by Officer Reilly and an unknown officer, including the use of pepper spray, (2) the arrest and detention of both Plaintiffs without any indicia of criminal activity, and (3) the filing of false reports in order to conceal the aforementioned activities. Plaintiffs repeatedly state in their Complaint that the individual officers committed those offenses in a willful and malicious manner. In essence, Plaintiffs claim that the individual officers knowingly and willfully violated the Fourth, Fourteenth, and Eighth Amendments to the United States Constitution – the ultimate "standing order" on police conduct – along with at least one criminal law. See N.J. Stat. Ann. § 2C:12-1(b) (classifying the actions of a person who "knowingly causes bodily injury to another with a deadly weapon" such as pepper spray as "aggravated assault.").

While the fact that the alleged violations constitute willful misconduct requires Plaintiffs' NJCRA claim against the municipality to be dismissed, it does not leave them without recourse. Rather, it simply means that they must seek relief from the individual officers. Normally, police officers enjoy qualified immunity from civil liability for violations committed while enforcing or executing the law in good faith. Bernstein v. New Jersey, 986 A.2d 22, 36 (N.J. Super. Ct. App. Div. 2010). In such cases, a plaintiff must bring suit against the municipality itself to recover. In cases of willful misconduct, however, the plaintiff must seek redress from the officers

16

themselves. See N.J. Stat. Ann. § 59:2-10 (insulating municipalities from liability based on the conduct of their employees); Fielder, 661 A.2d at 243 ("[T]he defense of good faith in the enforcement or execution of the law is unavailable when the public employee is guilty of willful misconduct."). In other words, a plaintiff complaining of police misconduct must make a choice: he may allege that the violations on which his suit is based were willful and seek to impose personal liability on the offending officers, or claim that those violations were committed in good faith and seek redress from the municipality. But he may not do both. Plaintiffs in this action chose the former. In light of that choice, their claims against the Township must be dismissed with prejudice.

**D. Punitive Damages**

As a final matter, Plaintiffs contend that the Court's December 21, 2009 Order was overbroad because it dismissed their claims for punitive damages against Officers Reilly and Sayer, Detective Marucci, and the ten unknown "John Doe" officers despite the fact that those Defendants had not requested such relief. The Court agrees. The propriety of Plaintiffs' punitive damages claims against those individuals was not at issue in the previous Motion to Dismiss, and those claims were dismissed in error. Therefore, the Court will reinstate Plaintiffs' punitive damages claims against Officers Reilly and Sayer, Detective Marucci, and the ten unknown "John Doe" officers.

### III.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Reconsideration of the Court's December 21, 2009 Order is granted, and that Order is vacated. Defendants' Motion to dismiss is granted in part and denied in part, meaning that:

(1) Plaintiffs' Claims against the West Orange Police Department are dismissed with prejudice;

(2) Plaintiffs' claims against Chief Abbot are dismissed without prejudice. Plaintiffs may file an Amended Complaint within 30 days of this ruling curing, if they are able to do so, the defects in their claims against Chief Abbot.

(3) Plaintiffs' claims against the Township under 42 U.S.C. § 1985 are dismissed with prejudice;

(4) Plaintiffs' claims against the Township under 42 U.S.C. § 1983 are dismissed without prejudice.  Plaintiffs may file an Amended Complaint within 30 days of this ruling curing, if they are able to do so, the defects in their § 1983 claim against the Township;

(5) Plaintiffs' claims against the Township under the NJCRA are dismissed with prejudice;

(6) Plaintiffs' claims against the individual officers for punitive damages are reinstated.

The Court will enter an Order implementing this Opinion.


                **s/ Dickinson R. Debevoise__ _____ _____**
                DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: April 9, 2010